Good morning, may it please the court. John F. Edgar for Appellant Keith Clemens. Your honors, as you know, we have asserted several errors with respect to the district court's decisions regarding his dismissal of the case. I'd like to start out with respect to the dismissal of fraud counts. Specifically, the dismissal of the fraud counts arose from the accrual of the statute of limitations. The law is clear, and we're not necessarily arguing the law in this case, but necessarily the application of the facts of that law, where the accrual or inquiry notice of fraud begins, or the actual inquiry notice of fraud begins the accrual of the statute of limitations. The record in this case is very clear, and that is the plaintiff, Keith Clemens, was only aware that the head gaskets at issue in the particular model of Chrysler vehicle, which was the Neon, was failed in his vehicle. And the record is also clear that when that happened, he went on the internet and found on numerous websites. This was all in September of 2002? I believe so, your honor. And found that there were numerous blogs where he found across the country, others were experiencing the same problems as he had. Failed head gaskets, which caused the oil to leak. The plaintiff and the appellant contend that the district court improperly equated plaintiff's awareness of consumers' similar problems with head gaskets to plaintiff's knowledge that head gaskets were defective, and the defendant concealed and omitted this information. It's our position that this awareness is not sufficient to begin the statute of limitations to run. So when does the statute begin to run? At what point? It does begin to run when the actual inquiry notice of fraud. Okay, and when was that? That would have been shortly before the case was filed. So not until 2005? Not until 2005. What happened in 2005? 2005, your honor, he discovered that there was another case filed, that there were some other issues involved with the lawsuit, or another lawsuit pending in Illinois, and actually other states. I believe South Carolina, there was a pending class action, as well as Michigan, I believe. And this awareness... When were those lawsuits filed? I don't know when the other two were So in 2002, when he discovered that his head gasket was leaking, there had already been a lawsuit filed a year before that. Correct. But you're saying that your contention is that the statute of limitations doesn't even start until 2005, when he learns of the existence of another lawsuit? Correct. And that's when the evidence of fraud starts, is when he learns of the existence of a lawsuit? Well, he also needs to learn the existence... It sounds like the folks in Illinois sort of figured this out a lot earlier. Well, they actually, the folks in Illinois filed the lawsuit, and the actual evidence coming from the defendant later revealed the nature of the fraud. The Chrysler knew that this was a defective product long before the product entered the market. And so the Illinois suit, while it was filed under a fraudulent account, it was also filed under breach of implied warranty, warranties, and what have you. But the fact is that we believe that the district court ignored that evidence of fraud, which was in the sole possession of Chrysler. I mean, I think in the record, we have cited documents which state, clear back years before, the plaintiff purchased his 1998 vehicle. And that I quote, it is a known fact that we have head gasket defects in this model vehicle, and we need to do something about it. But yet they kept selling the vehicle... What's the difference between Chrysler knowing that at some point, their head gaskets are going to fail, and planned obsolescence? That's a good question, Your Honor. And I think the issue there is, and I think when the district court relied on Abraham, and that goes to the express warranty when he mentioned that Abraham case, is that there's no question that parts run their course. They break down. I think I'm answering your question, but that parts break down over time. And companies look and do certain studies to determine how long those products will last. Here, that's not what we have. We have a clear knowledge and facts being held by Chrysler, test after test after test, that the head gasket in question was of improper material, was of improper design. Improper material to do what? It lasted for 60,000 miles. It lasted for 60,000 miles, but the issue was... How long was it supposed to last? Well, by their own testimony, their own executives that testified under deposition, they expected a head gasket to last over 100,000 miles. Let's suppose that's what Chrysler aspires to. We have lots of warranties now that purport to go for 100,000 miles. Since the warranty that was in place here only went for 36 months, or for 36,000 miles, how can we claim that it's fraud to have parts that last well beyond 36,000 miles? I understand that Chrysler aspires to have head gaskets that will last much longer. They think that's going to be a better car, and that in the long run, that people will buy Chrysler cars because they will last much longer than 36,000 miles. Right. But why is it fraud if Chrysler is disappointed in the actual performance of its head gasket? Why does that make it fraud? Because the actual time period in which a part lasts is not necessarily the issue. It's the disclosure at the point of sale. So Chrysler was supposed to say to them, we've got a head gasket. We hope we'll run it for 100,000 miles even though we're not warrantying it. But it's possible that this one is not going to run that long? If they didn't warrant it, that's one issue. But if they didn't disclose... What were they supposed to disclose? What would the salesman have told your client? Well, the evidence that's in the record is that two out of three head gaskets were failing each year. I mean, two out of three head gaskets. I don't understand what that means. The evidence showed and is in the record that each year, 60 to 70 percent of these head gaskets were failing within the first 30... I'm getting the numbers wrong. Within around the first 30 to 40,000 miles. Well, that would mean that it would be covered under the express warranty as long as it occurred... Well, if it occurred right afterwards, then obviously Chrysler's argument is it wouldn't be covered under the express warranty. But when you talk about fraud, a reasonable consumer would want to know that information. The amount of the failure rate, for example, the fact that it is made of improper materials, whether they're getting massive, massive returns and vehicles brought in for this problem. Well, those types of things are often dealt with in recalls. It will also be dealt with in customer satisfaction surveys. There's lots of information out on the Internet. You're still having a hard time figuring out why this is fraud. Because it is a... What has Chrysler told your client that Chrysler has withheld from him? What does it represent to them? The issue is they've told them nothing. It's fraud by omission. Are they supposed to then, with every vehicle they sell, say, list every part on that vehicle and say, this vehicle, this part, we've had this many failures on this particular part. Do they have to do that with all the parts of the vehicle? No, Your Honor. I don't think we're contending that Chrysler or any auto manufacturer would need to do that. But in a situation where... And again, this goes back to a question of fact for the jury to determine what the responsibility is. But when you have a product, again, that is failing at a massive rate, a massive rate, this is not just a product that wore its course, a normal maintenance product, for example. This is an integral part of the vehicle that's designed to last over 100,000 miles. By their own testimony. When did the plaintiff learn that they were engaged in mass failure? Actually, the mass failure... Oh, okay, as far as the plaintiff himself, in September of 2002, he had a general knowledge that this is a common problem among consumers. And he knows that it's a common problem, and he knows that he wasn't told of it. He knows it was a common problem, but he didn't know that there was, number one, a defect, a clear design and material defect in it, and he was unaware that Chrysler held this information from him. Well, no, he was aware he wasn't told. He was aware that the only thing he was aware of, that there was a common problem. Just like if I went on the Internet right now, I could probably find a lot of people having problems with a Motorola C2-5 cell phone. And the earpiece breaks. That doesn't tell me that there is a massive defect that the manufacturer knew about before I bought that phone. If I knew that information, if Motorola or whatever company disclosed that information, hey, we're having a lot of problems with these, I wouldn't have bought it. It's a material issue that goes to my decision to purchase that product. And that's the issue of how I'm dealing with... When the statute of limitations accrued, at the very least, it's a question for the jury. And I think as the court, district court, cited Bedolla, the Bedolla case, it's notable that that case arose after a jury decided. It went to a jury as to when the statute of limitations accrued. At the very least, a jury should be determining this, not the court. Should be determining what? When the statute of limitations arose. When it accrued. It's a question of facts. Yes, but what is the fact that the jury has to determine? When the plaintiff knew or should have known or was on actual or inquiry notice of fraud. And I think there's also...  I'm not sure that Chrysler is going to dispute that your client knew of the defect in his head gasket as of September of 2002. And I don't see any reason why Chrysler would want to dispute whether your client knew of the lawsuit in Illinois as of 2005. Why doesn't that just make it a question of law as to whether what he knew in 2002 that everybody concedes he knew is sufficient as a matter of law to put him on notice or whether he has to have something additional such as knowledge of a lawsuit in Illinois. Well, for example, your honor, this case I believe is analogous to the Betts case which has been decided by this court since the briefing on this. And the Betts decision went on to state that the plaintiff at issue lost massive amounts of money by a bank. She was actually told by the bank that there were serious problems with her account. But the Betts case held that there's no evidence of fraud even when she was told that by the defendant and a reasonable jury could conclude that plaintiff would not have to have had initiated further inquiry  We're not dealing here with massive losses, are we? Of what? We're not dealing here with massive losses, are we? I think we call it costing $70 to fix the head gasket. You're right. But I guess what I'm trying to say is even when she was told by the defendant that there's serious problems, serious problems with her account, that didn't even start the accrual of statute of limitations with respect to the plaintiff. And at least the jury should be allowed to determine when that accrual would occur. And no, we're not dealing with massive amounts. We're dealing with massive amounts when you look at the numbers. I mean, this is one of the most sought-after cars during that period of time. And again, going back to the Illinois case, when we talk about some of the tolling issues, which I would like to touch on briefly, the Illinois case was filed in late 2001. That Illinois case sought a nationwide class of consumers. That Illinois produced, I think, over half of the neons in one of their plants nationwide. And the plaintiffs sought a nationwide class. And the court in Illinois declined to certify a nationwide class, but rather she certified an Illinois-only class. I think one of the Carolinas also certified a state-only class. That decision in Illinois was on November 22, 2005. The Illinois court certified that class for Illinois residents only. Mr. Clemens, here in California, filed his action, and I'm getting the exact date wrong. I don't have the exact date, but December, I believe, of 2005. I haven't found any state courts that would toll because of a case pending in another jurisdiction. I'm sorry, Your Honor. No, I was just asking if you had any. I don't have any right here. I do know that the district court relied upon several authorities. First of all, he stated that Clemens should have known that his case would not have been pursued in Illinois because there was plenty of authority rejecting certification of nationwide auto class actions, which we believe is incorrect. Nationwide classes occur commonplace in Illinois, and auto cases in California, nationwide cases, have been certified here in California. In fact, Chrysler itself commonly agrees to nationwide class action settlements in state courts. Why would that toll it? That would toll it because one of the issues, and I think we go to Catholic Services versus INS, is what gives notice? I mean, is the defendant on notice as to whether Mr. Clemens' case would be preserved? If that's true, then everything was told as of 2001, before he even had problems with his head gasket. That's when the lawsuit was filed in Illinois. Right, and then it would have been told until November 22nd of 2005, and shortly thereafter, when this Illinois court certified not a nationwide class. It's told because of the possibility that the Illinois court will decide to certify the class? Yes, because as Crown Court and seal, the United States Supreme Court stated, the class action rule both permits and encourages class members to rely on the named plaintiffs to press claim. Once it's been certified. Yes, once it's been certified. But it was never certified. Right, under that same guise, the scope of it was reduced, thereby leaving Mr. Clemens his ability under American Pi to file his own case. Did he have unlimited time? He did not have unlimited time, but he filed it the next month, I mean, weeks after. Why wasn't he under an obligation? Let's suppose that Mr. Clemens knew for a certain day of Chrysler's fraud in 2002 and that you would not dispute that. So he had three years to file it. You claim it's been told. Why doesn't he have an obligation to file a protective lawsuit? Because he does have the ability to rely upon other plaintiffs seeking redress for his problems out of a nationwide class action. That may or may not be certified. That may or may not be certified, you're right, Your Honor. There's no guarantee. In fact, Chrysler obviously opposed the nationwide class action in Illinois. Counsel, you have one minute if you'd like to reserve that time for rebuttal. I would, Your Honor. Thank you very much. Good morning, Your Honors. May it please the Court, Frederick Baker for Chrysler. These are, of course, questions of state law. And two months after the district court entered its second order granting summary judgment in favor of Chrysler, the California Court of Appeal handed down its decision in Daugherty v. American Honda. The cite for that is 144 Calab 4th 824. It's cited in our brief. The facts in Daugherty are analytically indistinguishable from the facts of this case, and its holdings confirm that the district court's decision was correct on every point. The plaintiffs in Honda in Daugherty alleged, as the plaintiffs do here, that certain model years of Honda vehicles had an inherent defect in their engines, that Honda knew of this defect at the time it sold the vehicles, that because it was a latent defect, it was present in the engines at the time the vehicles were sold, even though it may not have manifest until well after the warranty period. And the plaintiffs claim there, as they do here, that that means that Honda had an obligation to repair those failures under the express warranty, and that failure to do so was a breach of the express warranty and an unfair, unlawful business practice. These are precisely the same claims that are made here. They were rejected at each and every turn by the Daugherty court. Well, I understand why the court would have dealt with express warranty. Did it deal with the fraud question? Well, in an indirect sort of way. There was a claim in Daugherty that there was a violation of the consumer UCL in California, and one of the claims they made was that failure to disclose was a fraudulent act. And the court, following on its analysis of the Consumer Legal Remedies Act claim, found that there was no duty to disclose as a matter of law, and that in the absence of a duty to disclose, there can be no fraud as a matter of law. And that would apply, I submit, to a common law fraud claim, just as it would to a fraud claim under the UCL. In fact, the UCL fraud claim is a broader claim than a common law claim, as the Daugherty court said, because it has all the elements except reliance. You don't have to prove individual reliance in a fraud claim under the UCL, as you do in a common law individual fraud claim. So I would submit that that holding bars the fraud claim as well. All right. Its analysis, there was no violation of the Consumer Legal Remedies Act alleged here, as there was in Daugherty, but I think the analysis is important. The CRLA prohibits businesses from engaging in unfair, deceptive or unfair acts or practices, and those include making misrepresentations about the character or the quality of goods sold. And the court said there are two elements to that. First, there is no claim, no facts alleged in the complaint, which would suggest that there was an affirmative misrepresentation made here. Exactly the same is true here. Mr. Clemens was deposed, and he said he didn't rely on anything other than his own research when he decided to buy a Dodge Neon, went in and bought it. There is no allegation of alleged misrepresentation of fact. The court went on to say there can be a violation of the act for an omission, but only in two circumstances. The first is where there is an omission that is contrary to a fact represented. If I say my product is made of X and I omit the fact that it's not made of X, it's made of Y, that may be an omission that satisfies the act. The only other circumstance is where there is an affirmative duty to disclose, and the court said in that case where the alleged fact that there is supposedly a duty to disclose only goes to the quality, the reliability, how long a part will last. There is no duty to disclose under those circumstances as a matter of law. It relied on the Barden case that we cite in our briefs where, who was it, Honda, I think. It was Chrysler, actually. It used a stainless steel exhaust manifold instead of a cast iron manifold, and the stainless steel was to save money even though it doesn't last as long, and the court said there's no obligation to disclose that sort of a fact. You don't have to disclose what your product is made of, your various component parts are made of, and how long you expect them to last. All they've got to do is last as long as the warranty. The only representations that are relevant here are the representations made in the warranty, and if the vehicle exceeds that, there is no violation of this act as a matter of law. The only exception to that is where the fact that it's alleged that there's a duty to disclose is some serious safety issue, and there's no legitimate claim here that there's a safety issue due to head gaskets leaking oil. Actually, in the Daugherty case, the alleged defect was much more potentially severe, I suppose, than this one, and there's simply, under the Daugherty's analysis of the duty of a manufacturer to disclose under the very circumstances of this case, there is no duty as a matter of law. There, therefore, is no fraud claim as a matter of law. There is no breach of express warranty claim as a matter of law, and there is no UCL claim as a matter of law. It cuts across all of those claims. The only one it doesn't touch, I suppose, is the breach of implied warranty cause of action, which hasn't been discussed, but I would just say briefly that I first question whether one could ever, as a matter of law, bring a claim that a product which exceeded its warranty by tens of thousands of miles before it first had a relatively minor problem could ever be found not to be merchantable or unfit for its intended purpose, and he's still deriding it. But beyond that, of course, is the insurmountable problem of privity. California law holds that privity is still required, contractual privity is still required, and he concedes that he was not in contractual privity with Chrysler. There are a couple of limited exceptions to that. Over the 69 years that California has, since California first created the first exception, they've made three. Foods, drugs, and pesticides, harmful products that are ingested into the human body. To say that a leaking oil head gasket is comparable to those situations is, in my view, preposterous, nor does the Peterson case apply. The Peterson case was where a company bought a very dangerous product, the company gave it to the employee who was injured, and they found that essentially both the employee and the employer, the company, were in privity with the seller. There was no second sale, as there is here. There clearly was no privity here. None of the exceptions apply. The breach of implied warranty claims fail as a matter of law as well. I guess I'll just say a few words about the statute of limitations. The standard in California, the Jolly case and the Norgard case are quite clear. You don't have to have notice of fraud. You don't have to have notice of every fact that may support your cause of action. That's for discovery. You don't have to have knowledge of legal theories. What you have to have is knowledge or suspicion, not knowledge, but suspicion that you've been wronged. It's sufficient to put you at least on inquiry notice that someone has done something wrong to you. Then you've got a duty to conduct your investigation and file your lawsuit if appropriate. Here, in September of 2002, Mr. Clemens has a leaky, this guy knows a lot about cars, a pretty good amateur mechanic apparently, his head gasket's leaking. He gets on the Internet and he learns that there is, according to the community of neon enthusiasts, I didn't know there was one, but apparently there is, this is an epidemic. It's a problem. And Chrysler has given some people breaks on the repair costs. He keeps saying that he never used the term epidemic. I could be wrong about that, Your Honor. I'll have to double check the testimony. It's clear that he gets on there and he says, this is a big problem, and it's such a big problem that Chrysler is giving discounts on repairs for people within, I guess if they're close enough to the warranty period. And he goes into his dealership and he says, I think I've got this problem, don't I? I guess he never affirmably says so, but he thinks they have an understanding that there is a problem. And he says, I want Chrysler to pay for it, at least pay part of it. He says, I'm not going to do it. You can call Chrysler if you want. He calls Chrysler and he finds out that the vehicle is at 60,000 miles now, and they say no. I mean, that I think as a matter of law is at least inquiry notice that he has been wrong, that Chrysler has wronged him. When did he call Chrysler? I don't have the exact date. He goes to the La Brea dealership in, when is that, September? September 19th, 2002. And I think he called within a week after, something like that. In this tolling by the alleged tolling, many cases that we have cited in our brief say that you can't just sort of blindly rely on American Pipe and Crown Court. Those were class actions that were filed in federal court. Ultimately, some of the plaintiffs in those cases were moved out of the class, and they were allowed to refile again in federal court. The Supreme Court essentially said, you know, the whole purpose of class actions is efficiency. If we don't allow people to do this, then everybody in the world, in the class, is going to have to file a protective lawsuit just in case we don't certify the class or in case it goes away. So it made some sense in efficiency. The cases that we cite say that that rationale just goes out the board when you're talking about two different jurisdictions. It is more likely to create, it's not about the defendant's knowledge or its ability to prepare its defense. It's about the supposed inefficiencies. Counsel apparently is claiming that if a single plaintiff files a product liability lawsuit in Maine and seeks to certify a national cast, he has by that very act stayed the statute of limitations for every consumer of that product all the way across the country. And as your Honor pointed out, most, if not all, courts have addressed the question and have said we're just not going to permit this sort of cross-jurisdictional tolling because either everybody has to do it or nobody does it. The majority don't. Otherwise, the claims that allow it, the jurisdictions that allow it are going to become magnets for every case that's filed. I mean, obviously California has not yet endorsed it. I don't think they ever will. I think the language and the rationale of Jolly strongly suggests that they would never endorse cross-jurisdictional tolling. It's just not the law in California. It would be bad policy to say it. I mean, some of these cases drag on for years. I know cases that have been, you know, class action that's been filed and discovery takes place over a year or so on class issues and a motion is made and a class is certified and there's more discovery and the class is decertified. It can go on for a decade. And you're telling me every case in the country is stayed during the entire case at this time that this case in Maine is going on? It's not the law. It's not the law in California. It's not the law in any jurisdiction that I know of and it shouldn't be applied here. I think we've briefed everything else pretty thoroughly, Your Honor. If you have any questions, I'd be glad to respond. Thank you. Thank you. Let me please, Court, just one couple of points to follow up. We're not saying that, you know, every single state court case that's filed seeking nationwide class search stays everything. There's certain standards in place. Standards are set forth by the Supreme Court. There's been cases here in California, the Ninth Circuit, and those standards we're contending have been met. And here, one of those standards is that the defendant has put on notice that, for example, Mr. Clement's claim would have been consumed within the context of the Illinois nationwide class action. And they certainly were. They opposed that nationwide class search and they got exactly what they wanted. They narrowed that scope and the court certified a statewide case. And it can be of no surprise that Clements did exactly what he should have done at that point and go out and file his own case seeking a California-wide case. And I believe I'm out of time. This doesn't really go to your rebuttal, but what is your evidence of materiality of the omission? Because I think the testimony is clear when he was asking his deposition, would you have purchased a vehicle knowing that there was a defect in the sense that your head gasket would have lasted 50,000 to 60,000 miles? He said no way. Thank you. Thank you, counsel. Thank both counsel for the argument. Clements is submitted.
judges: Canby, Bybee, Hunt